UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re: MARIE L. CHAVANNES,          :          Case No. 13-18075REF

Debtor                              :          Chapter 13

# MEMORANDUM OPINION AND ORDER DENYING DEBTOR'S MOTION TO VOID NEW YORK JUDGMENT AND FOR SANCTIONS

## I.    INTRODUCTION

This is Debtor's third bankruptcy case filed in three years. The first two were dismissed without a discharge for Debtor. Throughout her three cases, certain litigation in New York has proceeded and has been, on occasion, stayed by her filings. The dispute before me now revolves about the entry of a judgment against her in 2013 in the New York litigation. She has moved that I void that judgment because in November 2010, over two years before its entry, a procedural aspect of the New York case proceeded in spite of the automatic stay that (she alleges) was then in effect during her first bankruptcy case. I disagree, I will deny

her motion, I will not void the New York judgment, and I will not issue any
sanction for violation of the automatic stay.

A single procedural event in the history of this dispute serves as the
linchpin to (a) this motion to void the New York judgment and for sanctions, (b)
numerous other contested matters, including motions to dismiss this case, (c)
Debtor's objection to a plan-killing claim arising from the New York judgment,
and (d) an adversary proceeding contesting whether the New York debt arising
from the judgment is dischargeable, all of which arise in this bankruptcy case. At
the base of all of the above disputes is the signing and entry of a formal, written
order in the New York litigation in November 2010, at a time when Debtor was in
her first bankruptcy. Debtor claims that entry of that order was void as violative of
the automatic stay of Section 362(a) of the Bankruptcy Code. First American Title
is Debtor's opposing party in most of the disputes.[1] First American maintains that
the entry of the order in November 2010 did not violate the stay. Because the
November 2010 order is void, Debtor argues, the New York litigation thereafter
proceeded unlawfully. The judgment was entered against Debtor in May 2013, two
and one-half years later in the allegedly tainted litigation, and therefore is also
void, she claims.

---

[1]   The Chapter 13 Trustee is movant in one of the dismissal motions.

Debtor is not advocating that I void the judgment on a clean slate. I must review her actions and her inaction in deciding whether to grant her motion and void the New York judgment.

First, she has already confronted the New York court with her argument that its November 2010 order was void.  As part of the New York court's consideration of entering judgment in favor of First American, Debtor argued that everything that occurred in the New York litigation after November 2010 was void because of the automatic stay. The New York court, nonetheless, entered the judgment against her.

Second, the November 2010 order and stipulation did nothing more than memorialize and reiterate, with more or less formal language, an order entered months previously, before Debtor filed her first bankruptcy. The New York order in November 2010 did nothing new and was a purely ministerial act reiterating a prior order.

Third, the stipulation formally approved on the record in November 2010 did not affect, harm, or jeopardize Debtor in any way. Furthermore, it also memorialized the prior approval of the stipulation by the New York court.

Fourth, the only possible downside Debtor asserts arises from the November 2010 order is its restoration of the New York litigation to active status.

3

But the case had been restored to active status in April 2010 and was restored again in April 2013, before the judgment was entered against Debtor. The April 2010 restoration was ordered before Debtor had filed any bankruptcies and the April 2013 restoration was ordered between Debtor's second and third bankruptcies.

Fifth, Debtor said not a word to this Court about the New York litigation in both her first and second bankruptcy cases or to the New York court and the other parties about her first bankruptcy case, thereby sandbagging First American and the court in the New York litigation. The defense of laches and possible annulment of the automatic stay as it affects the November 2010 order may exist. Neither Debtor nor First American raised these arguments, so I will not base my decision on them.

Because the substantive arguments compel me beyond peradventure to deny Debtor's request to void the New York judgment, I will also deny Debtor's request for sanctions.

I agree with First American that Debtor's actions and inaction require that I decline both to void the judgment entered in May 2013 and to impose sanctions on First American. Resolution of this issue will not automatically resolve the numerous other disputes between Debtor and First American; but it will go a long way toward determining those remaining matters.

4

# II.  BACKGROUND

## A. AGREED UPON CHRONOLGY OF EVENTS

At the April 15, 2014 hearing on this matter, the parties presented identical exhibits regarding the chronology of some of the relevant facts and court events.[2] Following is the joint chronology of relevant and material events as filed by the parties:[3]

08-29-06: Robert Comond ("Mr. Comond") commenced a civil action in the Supreme Court of the State of New York, Kings County, Index No. 06-25961, captioned Robert Comond v. Golden Grand Developers LLC ("Golden Grand"), Marie Comond, et al. (the "New York Litigation").

10-30-06: Kenneth Brown, attorney retained by First American Title Insurance Co. ("First American") on behalf of Defendant Golden Grand, filed a Verified Answer with Cross-Claims against Co-Defendants.

---

[2]     Both parties were directed, through my Order dated April 10, 2014, to prepare exhibits that were simple chronologies of the dates of relevant and material events critical to resolution of this dispute. The parties submitted wholly identical chronologies. That is, Debtor's chronology, marked Exhibit "D-1," is identical to First American's chronology, marked Exhibit "FA-1."

[3]     I have set forth the parties' chronology mostly verbatim. I took the liberty of changing some non-substantive punctuation, changing the tense from present to past, changing the defined term "New York Action" to "New York Litigation," changing the defined terms "First Case" and "Second Case" to "First Bankruptcy Case" and "Second Bankruptcy Case," adding defined terms, changing occasional references to me from "The Honorable Richard E. Fehling" to "Judge Fehling," and adding an occasional definite or indefinite article, none of which change the substance or the sense of the chronology.

12-11-06: Debtor and her son, Marvin Comond, appeared in the New York
Litigation through their attorney, David Gevanter, Esq., who filed an
Answer on their behalf denying the allegations against them in the
Complaint [and presumably in First American's Cross-Claim].

05-25-10: A Stipulation of Settlement and Assignment of Surviving Claims
and Cross-Claims Against Defendants Marie and Marvin Comond
was executed by Mr. Comond, Anneau Gilbert, and Golden Grand
(the "Stipulation"), which incorporated the terms of settlement and the
assignments to First American of the surviving claims against Debtor
in the New York Litigation.

06-02-10: First American issued a check dated [June 2, 2010][4] in the amount
of $190,000 on behalf of Golden Grand to Mr. Comond in full
satisfaction of his claims against Golden Grand in the New York
Litigation.

07-08-10: The Stipulation was filed with Kings County Supreme Court.

09-21-10: Debtor, unbeknownst to First American, filed a Chapter 13
Bankruptcy case, Case No. 10-22825 (the "First Bankruptcy Case").

10-05-10: Debtor filed missing schedules and statements, including her
Statement of Financial Affairs in the First Bankruptcy Case.

10-05-10: Debtor filed her Chapter 13 plan in the First Bankruptcy Case.

11-01-10: A proposed Order and Judgment Restoring Action to Calendar,
Discontinuing with Prejudice Certain Claims and Cross-Claims, and

---

[4]      The parties omitted the date of the check from their chronologies, but Exhibit FA-8, which is a
copy of the payment check, shows that the date of the check was June 2, 2010.

Assignment and Subrogation of Surviving Claims and Cross-Claims Against Defendants Marie and Marvin Comond, was signed by Judge Martin Schneier in the New York Litigation (the "November 1, 2010 Order").

11-17-10: The November 1, 2010 Order was filed and entered with the Kings County Clerk.

02-09-11: The Chapter 13 Trustee, Frederick L. Reigle, filed a Motion to Dismiss the First Bankruptcy Case based upon the fact that the plan was not feasible and was underfunded.

03-11-11: First American filed a proof of claim for $190,000 in the First Bankruptcy Case (the "First Bankruptcy Case Proof of Claim").

05-26-11: Judge Fehling dismissed the First Bankruptcy Case without prejudice.

09-19-11: Debtor filed her Second Chapter 13 Petition in Bankruptcy, Case No. 11-22442 (the "Second Bankruptcy Case").

10-03-11: Debtor filed her Schedules and Statements including her Statement of Financial Affairs in the Second Bankruptcy Case.

10-03 -11: Debtor filed her Chapter 13 plan in the Second Bankruptcy Case.

11-22-11: First American filed a proof of claim in the amount $190,000 in the Second Bankruptcy Case (the "Second Bankruptcy Case Proof of Claim").

01-05-12: First American filed an Objection to Debtor's Chapter 13 plan in the Second Bankruptcy Case.

04-05-12: Judge Fehling dismissed the Second Bankruptcy Case.

08-17-12: Golden Grand moved in the New York Litigation (i) to restore the
action to the calendar, (ii) to amend the original caption to reflect that
First American is the assignee of the original Plaintiff's fraud claim
against Defendants Marie Comond and Marvin Comond, and (iii) for
summary judgment in favor of First American against Defendants
Marie Comond and Marvin Comond (the "August 17, 2012
Motions").

04-04-13: The August 17, 2012 Motions were argued before Judge Graham
in the New York Litigation on this date. The Judge issued a two-page
decision and Order on that same day:

> As to the plaintiff's (First American's) motion for summary
> judgment, which is also before this court, the Court has been
> given substantial evidence regarding the transfer of the real
> property at 620 Grand Avenue, Brooklyn, New York, and the
> plaintiff has made a prima facie case that said transfer took
> place as a result of a forged deed to facilitate the sale and that
> Robert Comond did not participate or authorize or confirm such
> transaction.

> No opposition of any admissible evidence has been offered to
> raise a triable issue of fact.

05-10-13: Judge Graham entered the judgment in favor of First American
and against Debtor and Marvin Comond for $240,777.50 in the New
York Litigation (the "Judgment").[5]

06-26-13 The Judgment was domesticated in Berks County, Pennsylvania.

---

[5]      See also fn. 10, infra.

07-11-13: Debtor and Marvin Comond filed an appeal of the Judgment to the New York Supreme Court, Appellate Division, Second Department (the "NY Appellate Division").

08-16-13: The NY Appellate Division entered an Order To Show Cause returnable on September 13, 2013, which provided that "pending the hearing and determination of the motion," First American is "restrained and enjoined from taking any action . . . to enforce the aforementioned judgment or to otherwise encumber or interfere with the assets of the Appellants."

09-12-13: First American filed timely opposition to the Order To Show Cause.

09-16-13: Debtor filed this current bankruptcy (the "Current Bankruptcy").

09-16-13: An Order was entered in the Current Bankruptcy providing that if Debtor did not file her matrix and missing schedules and statements by September 23, 2013 and September 30, 2013 respectively, the case would be dismissed.

09-16-13: Debtor filed an application to pay filing fee in installments.

09-17-13: Judge Fehling issued an Order disapproving the request to pay fee in installments.

09-30-13: Debtor filed a motion to extend time to file schedules.

10-01-13: Judge Fehling issued an Order granting the motion to extend time to file Schedules, but provided that if the schedules were not timely

filed ". . . this case may be dismissed with prejudice without additional notice or hearing after October 23, 2013."

10-22-13: Debtor's newly retained counsel filed schedules, statements, and plan.

11-08-13: First American filed a Motion to Dismiss or Convert Case ("Dismissal Motion").

12-31-13: Debtor filed a pro se Motion to Compel New York Court To Void Judgment.[6]

01-06-14: Order entered granting motion to determine that collateral estoppel precludes Debtor from re-litigating issues addressed in the New York Litigation.[7]

# B. ADDITIONAL PROCEDURAL HISTORY OF THE PRESENT CASE

12-10-13: First American filed a proof of claim in the amount of $247,783.16 in the Present Case (the "Present Case Proof of Claim").

03-10-14: First American filed its adversary proceeding against Debtor praying that the debt owed pursuant to the Judgment would be non-dischargeable.

04-09-14: Debtor's new counsel amended Debtor's motion to compel the New York Court to void the Judgment, which amended motion

---

[6]    See fn. 20, infra, for my consideration of the objectionable relief sought by Debtor in her motion.
[7]    The parties omitted from their chronologies First American's Motion To Determine that Collateral Estoppel Precludes Debtor from Re-Litigating Issues Addressed in the New York Action, which First American filed on December 10, 2012.

continued to ask that I order the New York state court to take some action.

04-10-14: Debtor objected to First American's Present Case Proof of Claim, which is based entirely on the Judgment.[8]

04-15-14: Hearing was held on both Debtor's motion to void the Judgment and First American's motion to dismiss this Chapter 13 case.

04-17-14: Debtor filed a supplement to Schedule I/J, amended Schedules I and J, and her second amended Chapter 13 plan before I entered my Order granting First American's motion to take judicial notice of certain documents.

04-17-14: Debtor filed her third amended Chapter 13 plan, which differed from the second amended plan she had filed only a few hours earlier.

## C. **JUDICIAL NOTICE OF CERTAIN DOCUMENTS IN DEBTOR'S THREE BANKRUPTCY CASES**

On January 28, 2014, First American moved that I consider, by judicial notice, certain items from the dockets in Debtor's three bankruptcy cases.[9]

---

[8]    This is an item for which Debtor sought judicial notice.

[9]    I may take judicial notice, under Fed. R. Evid. 201 (incorporated into bankruptcy cases by Fed. R. Bankr. P. 9017), of the docket entries and the bankruptcy petition, schedules, and statement of financial affairs filed in this case. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. March 8, 1993); In re Paolini, No. 85-00759F, 1991 WL 284107, at *12 n.19 (Bankr. E.D. Pa. Jan. 11, 1991); see generally Nantucket Investors II v. California Federal Bank, (In re Indian Palms Assoc., Ltd.), 61 F.3d 197 (3d Cir. 1995). Although I may not take judicial notice of the facts contained in the debtors' files that are in dispute, In re Augenbaugh, 125 F.2d 887 (3d Cir. 1942), I may take judicial notice of adjudicative facts "not subject to reasonable dispute . . . [and] so long as it is not unfair to a party to do so and does not undermine the trial

First American asks that specified documents be admitted both in its motion to

dismiss and in Debtor's motion to void the Judgment.[10] I granted the request of

First American and I took judicial notice of certain documents in my Order dated

April 17, 2014. Debtor had made no similar request before the April 15, 2014

hearing.

At the close of the April 15, 2014 hearing on both the motion to

dismiss and the motion to void the Judgment, counsel for Debtor advised that he

also intended to ask me to take judicial notice of certain documents from Debtor's

three bankruptcy case dockets. Debtor's counsel consented to my statement that he

would submit a list of suggested items that he wanted me to admit into evidence

through judicial notice by mid-afternoon on Wednesday, April 16, 2014. Debtor

failed, however, to file any request for judicial notice until late on April 17, 2014,

---

court's fact finding authority." Indian Palms, 61 F.3d at 205 (3d Cir. 1995) (citing Fed. R. Evid. 201(f)
advisory committee note (1972 proposed rules)).

[10]     The Judgment that serves as the subject of this litigation is in the case captioned First American
Title v. Chavannes, et al., No. 06-25961 (N.Y. Supreme Court, County of Kings), and was entered
through a handwritten order on April 4, 2013, and was memorialized in a typed Order and Money
Judgment dated May 10, 2013, and entered on May 16, 2013. The grounds supporting the Judgment are:
(1) Debtor and her son Marvin "caused" and "induced" the forgery of Mr. Comand on a "Durable General
Power of Attorney" dated May 11, 2005; (2) the transfer of certain real estate took place as a result of a
forged deed to facilitate the sale; and (3) Mr. Comand did not participate, authorize or confirm such
transaction. I made these findings and conclusions applicable to this case, based on collateral estoppel, in
my Order dated January 6, 2014.

after I had ruled on First American's judicial notice motion. I denied Debtor's

tardy request for judicial notice.[11]

      Following are the documents that I admitted into the record of this

contested matter through judicial notice of items on the dockets of Debtor's three

bankruptcy cases:

## A.  <u>Chapter 13 Case No. 10-22825 (the "First Bankruptcy Case")</u>

1.  Debtor filed the First Bankruptcy Case on September 21, 2010;

2.  Nothing in the First Bankruptcy Case provided notice of the case to the parties in the New York Litigation;

3.  Debtor failed to disclose, in Paragraph 4 of her Statement of Financial Affairs, that the New York Litigation was at issue at that time or within the year preceding the filing of the First Bankruptcy

---

[11]    My order on judicial notice was entered at about 1:30 p.m. on Thursday April 17, 2014, a day after Debtor's counsel was required to file his list of requests. Debtor failed to file any request for judicial notice until about 4:00 p.m. in the afternoon of April 17, 2014 (a day late and a few hours after my order was entered). Nevertheless, I informed Debtor in my order denying the motion for judicial notice that I intend to refer to some of the documents sua sponte, as I deem appropriate, in later orders and opinions. Debtor's eight requests for judicial notice are effectively granted and I refer to them, except for the following: Request for limitation on First American's requests, (done to the extent it misstates a docket entry); announce a legal conclusion that Debtor had complied with the Bankruptcy Code at all times (will not do); and take notice of the instructions accompanying Paragraph 4 of Statement of Financial Affairs (done). Debtor was and is not prejudiced in any way by my denial of her late motion.

      Debtor's counsel also moved for reconsideration of my decision denying his requests for judicial notice by blaming it on his paralegal. Debtor has augmented her request and asked that I enter additional, post-hearing testimony from Debtor (Debtor now claims that she had notified her New York counsel about the pending bankruptcies). Debtor's motion for reconsideration was pending until its May 13, 2014 hearing. <u>See</u> Debtor's Motion To Reconsider Debtor's Response to Request of First American Title Insurance Company et al for the Court To Take Judicial Notice for the Purpose of Deciding First American's Motion To Dismiss and Debtor's Motion To Void Judgment, filed on April 22, 2014. Both Debtor and First American agreed that the motion for reconsideration could proceed on the papers without further effort or time by the parties.

Case; the New York Litigation had been pending within the year immediately preceding the filing of the First Bankruptcy Case;[12]

4. Debtor failed to identify the parties in the New York Litigation as creditors in her Schedule F or in any other of her Schedules filed in the First Bankruptcy Case, whether original or amended, and whether as disputed or undisputed;

5. On October 5, 2010, Debtor filed her Chapter 13 plan in the First Bankruptcy Case, which plan provided for 100% payment to all creditors, although it did not pay First American's claim; and

6. On May 26, 2011, I granted the motion of the Chapter 13 Trustee and dismissed the First Bankruptcy Case because Debtor's plan was not feasible and was underfunded.

## B.  Chapter 13 Case No. 11-22442 (the "Second Bankruptcy Case")

1. Debtor filed the Second Bankruptcy Case on September 19, 2011;

2. Debtor failed to notify the parties in the New York Litigation about the Second Bankruptcy Case;

3. Debtor failed to disclose, in Paragraph 4 of her Statement of Financial Affairs, that the New York Litigation was pending at that time or within the year preceding the filing of the Second Bankruptcy Case; the New York Litigation had been pending within the year immediately preceding the filing of the Second Bankruptcy Case;

---

[12] Debtor wants me to take judicial notice of the instructions for Paragraph 4 of the Statement of Financial Affairs. I find and conclude that the instructions for Paragraph 4 provide nothing relevant for my determinations herein, but I will take judicial notice of them nonetheless.

4. Debtor failed to identify the parties in the New York Litigation as creditors in her Schedule F or in any other of her Schedules filed in the Second Bankruptcy Case, whether original or amended, and whether as disputed or undisputed;

5. On October 3, 2011, Debtor filed her Chapter 13 plan in the Second Bankruptcy Case, which plan allegedly provided for 100% payment to all creditors, although it did not pay First American's claim; and

6. On April 5, 2012, I granted the motion of the Chapter 13 Trustee and dismissed the Second Bankruptcy Case because Debtor had failed to make payments to the Trustee, her plan was not feasible, and her plan was underfunded.

## C. Chapter 13 Case No. 13-18075 (the "Present Case")

1. Debtor filed the Present Case on September 16, 2013;

2. Debtor identifies five separate parcels of real estate, valued in the aggregate amount of $233,300, in Schedule A in the Present Case;

3. Debtor lists First American's unsecured claim ($241,000) in Schedule F of the Present Case without noting that it is disputed;

4. Debtor lists additional unsecured claims in the aggregate amount of $53,401 in Schedule F in the Present Case;[13]

5. Debtor disclosed, in Paragraph 4 of her Statement of Financial Affairs, the New York Litigation.[14]

---

[13]    Berks County and the City of Reading filed eight tax claims against Debtor in an aggregate amount of approximately $26,500. This is an item for which Debtor sought judicial notice. Although Debtor listed $53,401 of unsecured debt (other than First American) in her Schedule F, the total amount of unsecured claims (other than First American) is approximately $29,900.

[14]    This is an item for which Debtor sought judicial notice.

6. In the Present Case, Debtor filed a Chapter 13 plan on October 22, 2013, and filed an amended plan on November 8, 2013;

7. Debtor's original plan, filed on October 22, 2013 in the Present Case, provided 60 payments of $0/month to fund her plan, which is a total of $0 in plan payments;

8. Debtor's amended plan, filed in the Present Case two weeks later, on November 8, 2013, provides 60 payments of $500/month to fund her plan,[15] which is $30,000 in plan payments, which results in a total available for distribution to unsecured creditors (after the Chapter 13 Trustee commission is deducted) of $27,000 less any distribution to pay her attorneys' fees;

9. Debtor's original Schedules I and J in her Present Case provide that Debtor has $193 disposable income to fund her plan payments of $500 per month;

10. On April 17, 2014, after the hearing, Debtor filed amended Schedules I and J in her Present Case, in which she declares that her monthly income is $1,853[16] and her monthly expenses are $1,293, resulting in disposable income of $560.[17]

11. On April 17, 2014, after the hearing, Debtor filed a second amended Chapter 13 plan in her Present Case in which she provides for 60 monthly payments of $560 to fund her plan, and

---

[15]    First American erroneously states that Debtor identified $1,500 as her disposable income available to fund her amended plan in the Present Case. Actually, she provided $0 to fund her original plan and $500 to fund her amended plan in the Present Case. After the April 15, 2014 hearing, Debtor filed a second amended plan in which she identifies $560 as her disposable income.

[16]    First American, of course, did not ask me to take judicial notice of the amended Schedules I and J or the second and third amended Chapter 13 plans because they were filed on April 17, 2014, after First American's request for judicial notice and after the April 15 hearing. I have included them in this Order because they are later versions of documents that First American did ask to be included through judicial notice.

[17]    Id. Debtor sought judicial notice of this document.

her second amended Chapter 13 plan provides Zero Dollars to be paid to unsecured creditors.[18]

12. Also on April 17, 2014, Debtor filed a third amended Chapter 13 plan in her Present Case in which she provides for 60 monthly payments of $560 to fund her plan, and her third amended Chapter 13 plan provides for payment of certain amounts to three taxing authorities.[19]

---

[18]    Id. Debtor sought judicial notice of this document.

[19]    Debtor asked for judicial notice that her most recent plan provided 53 payments. That is incorrect. Debtor's third amended plan provides payments for 60 months, which means that Debtor must make larger payments to make up for the months in which she paid nothing or too little to the Chapter 13 Trustee. The third amended plan assumes that First American's Present Case Proof of Claim will be disallowed.

# III. DISCUSSION

In this memorandum opinion and accompanying order, I consider only Debtor's motion to void the Judgment against Debtor in the New York Litigation and for sanctions, which motion was filed on December 31, 2013.[20] I will consider at another time in the near future First American's motion to dismiss. I will consider the testimony and exhibits presented at the April 15, 2014 hearing, the chronology, and the documents admitted through judicial notice, all as set forth above. My conclusion and determination is that the following four[21] independent reasons compel me to deny Debtor's motion to void the Judgment:

## A. THE NEW YORK COURT HAS ALREADY RULED AGAINST DEBTOR BY ENTERING JUDGMENT DESPITE DEBTOR'S ARGUMENTS TO IT ABOUT THE AUTOMATIC STAY'S IMPACT ON THE NOVEMBER 1, 2010 ORDER

This first argument constitutes a critical basis for my decision to deny Debtor's motion to void the Judgment. The New York judge heard, considered,

---

[20]    When Debtor's counsel appeared for Debtor as her new counsel, I told him that I would not hold against him the remedy sought by his client when she filed her pro se motion for me to compel the New York court to void the Judgment. I am loath (and I am not certain I have the power) to order some state court judge to take any action. Debtor's counsel reiterated the same request for relief as was sought by his pro se client. I will consider the motion on the merits, recognizing that the only remedy available to Debtor would be for me to order simply that the Judgment is void.

[21]    Although First American did not raise the issues of laches or annulment of the stay, I will point below to similarities in laches and annulment decisions by my colleagues in this and other courts.

and rejected Debtor's argument against First American's motion for summary

judgment, in which she described how the New York Litigation had proceeded in

violation of the automatic stay.[22] Debtor argued at length about the allegedly void

November 1, 2010 Order and alleged that everything that occurred in the New

York Litigation after November 2010 was also void. She presented her argument

about the violation of the automatic stay specifically to the New York judge who

entered the challenged Judgment in favor of First American.

Debtor's opposition to First American's motion for summary

judgment described at length Debtor's prior bankruptcies.[23] Debtor's counsel

argued that summary judgment should be denied because the case had been

restored in November 2010 in violation of the automatic stay. The New York

Court acknowledged that Debtor had been in bankruptcy at the time the November

---

[22]      See Exhibit FA-16 – First American Title v. Chavannes, et al., No. 06-25961 (N.Y. Supreme
Court, County of Kings), hand written order and judgment dated April 4, 2013, pp. 1-2. See also Exhibit
FA-17– First American Title v. Chavannes, et al., No. 06-25961 (N.Y. Supreme Court, County of Kings),
typed Order and Money Judgment dated May 10, 2013, docketed May 16, 2013, pp. 5-6.
[23]      Exhibit FA-14 -- First American Title v. Chavannes, et al., No. 06-25961 (N.Y. Supreme,
County of Kings), Motion [of Debtor and her son] in Opposition To Restore Action to Calendar, etc.,
dated March 26, 2013, pp. 3-7 and ¶¶ 13-15, 17-18, and 22-34. See also Debtor's Amended Motion To
Compel New York Court To Void Judgment Entered in Violation of the Bankruptcy Automatic Stay and
for Sanctions, ¶21, p.5 ("Judge Graham acknowledged in [the] Order and Money Judgment that the
Stipulation was signed by Judge Schneier on November 1, 2010 and filed with the Kings County Clerk on
November 17, 2010, well after the date of the Bankruptcy on September 21, 2010.")

1, 2010 Order and Judgment Restoring Action to Calendar, etc., was signed,[24] but

he entered the Judgment nonetheless.

## 1.  Rooker-Feldman Doctrine

The New York court faced the same argument that Debtor presents to

me, and he entered the Judgment against Debtor in spite of it. The Third Circuit

Court reiterated very recently the well-known concept that bankruptcy courts are

not appellate courts that will hear appeals from state courts. See In re Bishop, No.

13-3805, 2014 WL 1099743 at *1 (3d Cir. Mar. 21, 2014). This Bankruptcy Court

is not, and may not serve Debtor as, an appellate court through which she may, in

effect, appeal a state court decision that she does not like. The Bishop decision

flowed from the long-standing Rooker-Feldman doctrine, which does not allow

parties in state court matters to relitigate them in federal court. Rooker v. Fid. Trust

Co., 263 U.S. 413 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462

(1983).

I am fully aware that the Bishop decision is marked Not for

Publication, which limits its precedential effect. See Fed. R. App. Proc. 32.1. The

---

[24]      Supra at n. 22. A state court is unquestionably capable and empowered determine that the
automatic stay of Section 362 does or does not apply in a matter before it. See Brock v. Morysville Body
Works, Inc., 829 F.2d 383, 387 (3d Cir. 1987); Chaney v. Grigg, (In re Grigg), Bankr. No. 11-71206,
Adv. No. 12-7008, 2013 WL 5771870 at *14 (Bankr. W.D. Pa., Oct 23, 2013); and Cortellessa v.
Cortellessa, (In re Cortellessa), Nos. 05-24258 & 06-2082, 2006 WL 1997407 at *2 (Bankr. E.D. Pa.,
June 9, 2006) and cases cited therein (recognizes the power of a state court to determine the effect of the
automatic stay on litigation before it).

Third Circuit Court's Internal Operating Procedures ("IOP") note that the court, by

tradition, does not cite to its non-precedential opinions because they are not

decided by the full court. The Third Circuit's IOP discourages lower court judges

from relying on unpublished opinions, but does not prohibit it. Bishop's holding is

persuasive and is wholly consistent with decisions in this and other Circuits that

adopt and follow the Rooker-Feldman doctrine. See Great Western Mining &

Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 165-70 (3d Cir. 2010);

Sabertooth, LLC v. Simons (In re Sabertooth, LLC), 443 B.R. 671, 683-89 (Bankr.

E.D. Pa. 2011).

## 2.  Collateral Estoppel and Res Judicata

The New York court's decision is also controlling for me because of

the twin doctrines of collateral estoppel and res judicata. I recently decided, in this

case, that I must follow the law of New York state in determining the elements for

these two preclusive defenses. See Order dated January 6, 2014, No. 38 on the

Docket of this case.  See also 28 U.S.C. §1738 (full faith and credit in federal

courts for state court decisions); Marrese v. American Academy of Orthopaedic

Surgeons, 470 U.S. 373 (1985). Merely because a New York matter is on appeal

does not limit the preclusive effect of the trial court's decision pursuant to both of

the doctrines.[25] The New York court entered the Judgment in the face of Debtor's

substantial argument that the November 1, 2010 Order was void and the New York

court could not, therefore, proceed. The decision to enter the Judgment in spite of

the November 1, 2010 Order must be given preclusive collateral estoppel and res

judicata effect.

The judge in the New York Litigation considered Debtor's allegations

about the November 1, 2010 Order, but he entered the Judgment. Based upon the

Rooker-Feldman doctrine and the preclusive effect of both collateral estoppel and

res judicata, I will not void the Judgment in the New York Litigation. For the

reasons set forth above, I will deny Debtor's motion to void the Judgment.

## B. THE NOVEMBER 1, 2010 WRITTEN ORDER WAS NOT NEW; IT SIMPLY MEMORIALIZED THE APRIL 16, 2010, ORDER AND DID NOT VIOLATE THE AUTOMATIC STAY

Debtor's complaint about the November 1, 2010 Order of the New

York court is that it violated Section 362(a) of the Bankruptcy Code.[26] The

---

[25]    Franklin Dev. Co. v. Atlantic Mutual Ins. Co., 876 N.Y.S.2d 103, 60 A.D.3d 897, 899 (N.Y. App. Div. 2d Dept. 2009)("The rule in New York is that the 'pendency of an appeal does not prevent the use of the challenged judgment as the basis of' collateral estoppel." quoting Anonymous v. Dobbs Ferry Union Free School Dist., 19 A.D.3d 522, 522–523, 797 N.Y.S.2d 120 (N.Y. App Div. 2d Dept. 2005) quoting Matter of Amica Mut. Ins. Co. , 85 A.D.2d 727, 728, 445 N.Y.S.2d 820 (N.Y. App. Div. 2d Dept. 1981)).

[26]    Debtor apparently bases her claims on Section 362(a)(1), which provides that Debtor's petition initiating her first bankruptcy, filed on September 21, 2010, "operates as a stay, applicable to all entities, of – the issuance or continuation, including the . . . action or proceeding against the debtor . . .." 11

22

November 1, 2010 Order, however, is neither a judicial nor a ministerial nor an

administrative action -- it does nothing more than memorialize the order

previously entered on April 16, 2010. It did not continue or restore the New York

litigation, but rather simply memorialized that the litigation had previously been

restored on April 16, 2010. As such, it did not effect a continuation of the New

York Litigation.

When I mentioned this issue at the hearing on April 15, 2014,

Debtor's counsel announced that he had briefed this very issue. He stated that my

understanding about ministerial/memorialized/administrative events was incorrect

and told me his brief would tell me why. Debtor's brief refers to a single case that

examines whether a ministerial/administrative action is excepted from the effect of

the automatic stay of Section 362(a).  Soares v. Brockton Credit Union, (In re

Soares), 107 F.3d 969, 975, 976 (1st Cir. 1997). In Soares, the First Circuit Court

provides a thorough analysis of the inapplicability of the automatic stay to purely

ministerial events in litigation.

The court begins its review of the case law by stating the rules:

"Ministerial acts, even if undertaken in a state judicial proceeding subsequent to a

bankruptcy filing, do not fall within the proscription of the automatic stay." Soares,

---

U.S.C. §362(a)(1). Debtor, when acting pro se based her argument on Section 362(a)(1), but her counsel
fails, however, to expressly commit to that argument in the amended motion to void the Judgment.

107 F.3d at 973-74.The court went on: "A ministerial act is one that is essentially clerical in nature. (Citation omitted.) Thus, when an official's duty is delineated by, say, a law or a judicial decree with such crystalline clarity that nothing is left to the exercise of the official's discretion or judgment, the resultant act is ministerial." 107 F.3d at 974. A duty is ministerial if the obligation to act is peremptory and plainly defined. Id. Frequently, routine scrivening follows on the heels of a judicial decision. Such actions, taken in obedience to the judge's peremptory instructions or otherwise precisely defined and nondiscretionary, are ministerial and do not violate the automatic stay even if undertaken after a party files for bankruptcy. Id. Debtor ignored this analysis of what is and is not ministerial.

In Soares, the court immediately noted that the state court action before it -- ordering a default and directing the entry of a judgment by the judge – possessed a distinctly judicial, rather than ministerial, character. Soares, 107 F.3d at 975. An order of default and an entry of judgment by a judge in the first instance differs substantially from memorializing the binding order of the New York court in April 2010, which restored the New York Litigation. The formal written November 1, 2010 Order does nothing more than was done through the April 16, 2010 order.

Many courts within the Third Circuit have examined what constitutes ministerial or non-ministerial acts. A California state court found Grigg in contempt before his bankruptcy was filed in the Western District of Pennsylvania. After Grigg's bankruptcy was filed, the California court entered judgment against him, which action was considered ministerial by the bankruptcy court. Chaney v. Grigg, 2013 WL 5771870 at*12. The judgment of contempt was entered based on an order that had been entered long before the judgment was rendered.

The bankruptcy court in Chase Manhattan Bank v. Pulcini (In re Pulcini), 261 B.R. 836, 841 (Bankr. W.D. Pa. 2001), recognized that some older decisions held that completing a sheriff's sale was not ministerial, when the court faced a pre-petition sheriff's sale. The court determined that a post-bankruptcy acknowledgment and delivery of the sheriff's deed were ministerial under Pennsylvania law and did not violate the automatic stay. Id. at 842. See also In re Connors, 497 F.3d 314, 321 (3d Cir. 2007)(delivery of sheriff's deed, although conveying legal title, is a ministerial act).

In Electric M & R, Inc., v. Aultman (In re Aultman), 223 B.R. 481 (Bankr. W.D. Pa. 1998), the court ruled that the entry of a judgment on a state docket by the clerk is a purely ministerial act that does not violate the automatic stay. Id. at 485 (relying on Soares as support for the proposition that a ministerial act does not violate the stay). The debtors in Aultman argued that, although the

state court had rendered its decision on May 21, 1998, before the debtors filed their

bankruptcy petition, the judgment was not entered until June 24, 1998, which was

after the debtors had filed for bankruptcy. The later, post-petition entry of the

judgment was purely ministerial and did not violate the stay. Id. Similarly, in the

matter before me, the New York court had determined and ordered that the New

York Litigation be restored in April 2010, but a formal written order restoring the

case was not filed and entered until November 2010.

Former Chief Judge Diane Sigmund of this court, relied on Soares to

support her decision that a ministerial act is the antithesis of judicial acts because

the essence of a judicial act is the exercise of some discretion or judgment. In re

Williams, 371 B.R. 102, 111 (Bankr. E.D. Pa. 2007). In Williams, Judge Sigmund

found that the post-petition order of possession was mandated by statute and

required no judicial discretion. Again similarly, the November 2010 filing and

entry of the restoration order was not new, had previously been ordered, and

required no additional judicial discretion.

The post-petition entry of summary judgment following the pre-

petition filing of all grounds for the entry of the judgment was declared a

ministerial act in Costa Transports, Inc., v. Last (In re Last), 440 B.R. 642, 652 -

653 (Bankr. D.N.J. 2010). In the matter before me, no judgment and no new relief

of any sort was entered against Debtor when any of her three bankruptcy cases existed.

So it is that many courts within the Third Circuit have reviewed circumstances closer to the line of what is and what is not ministerial or non-ministerial and what is or what is not discretionary or non-discretionary acts. The court decisions cited above found acts that might be considered more non-ministerial and discretionary than the act before me and have found them to be unaffected by the automatic stay of Section 362(a). I refer to the above cases, Grigg, Pulcini, Aultman, Williams, and Last, to support my characterization of the November 1, 2010 Order as purely ministerial. The November 1, 2010 Order did not constitute the entry of a judgment, the issuance of any new writs, or the acknowledgment or delivery of a deed. It required no discretion and had no impact on Debtor.

It frequently occurs that I enter a bench order or a heavily revised and interlineated written order during the course of a hearing, a trial, or a conference. I often follow the hearing, trial, or conference with a "clean" written order that serves two purposes. First, the written order allows the entire order and its predicates to be placed on the docket to clearly memorialize the oral or scribbled, extemporaneous order. Second, a later written order is easily retrieved by parties and non-parties alike who want to see/read what happened in Court during the

hearing, trial, or conference. Rather than (1) plodding through pages of the
transcript to find the oral order and its predicates or (2) trying to read my chicken
scratch or a heavily edited and interlineated proposed order, the written
memorialization of the order benefits the parties and the public. But it does not
constitute a new order – it simply restates the former order.

Following an oral bench order or a scribbled written order with a
cleanly typed order neither negates nor limits the order entered during a hearing,
trial, or conference. Sometimes I announce that the written order that follows does
not affect the efficacy of the bench order or the scribbled order. Sometimes I do
not. In either or both instances, the original order is binding and the later
memorialization provides a convenience.

Similarly in this case, the November 1, 2010 Order was merely a
memorialization of the April 16, 2010 order, which bound the parties.[27] The April
16, 2010, Stipulation and order were clearly intended to be, and were actually,
binding on the parties. By its check dated July 2, 2010, First American paid
$190,000 to Mr. Comond based on the parties' belief that the April 16, 2010 order
was binding, restored the case, and approved the parties' agreement to settle with
Mr. Comond, and to proceed with the New York Litigation. The November 1,

---

[27]     Exhibit FA-4 establishes that the New York court restored the New York Litigation through a
"regular order" dated April 16, 2010. The later November 1, 2010 Order is noted, but in the eyes of the
New York court the two orders were one and the same, both granting the motion to restore.

2010 Order came later and imposed no new obligations or benefits on any party,

including Debtor.  Because the November 1, 2010 Order did nothing new and

therefore did not violate Section 362(a), I will deny Debtor's motion to void the

Judgment.

## C. THE STIPULATION THAT WAS APPROVED IN THE NOVEMBER 1, 2010 ORDER DID NOT AFFECT, INJURE, OR JEOPARDIZE DEBTOR

The Stipulation that was filed with the November 1, 2010 Order did

not affect, injure, or jeopardize Debtor.

First, as with the November 1, 2010 Order to restore the New York

Litigation, the Stipulation was entered into orally on April 16, 2010, and was typed

and binding on all its parties as of May 25, 2010. The Stipulation was certainly

binding in June 2010 when First American paid $190,000 to Mr. Comond,

Debtor's husband. As in many agreements and stipulations in the midst of

litigation, not all parties were signatories. Neither Debtor nor her son was a party

to the Stipulation.

Second, the Stipulation did not do anything to, against, or for Debtor.

First American's New York attorney, Kenneth C. Brown, Esquire, testified at the

hearing on this case. Debtor's counsel's relentless questioning of Mr. Brown at the

29

hearing about the impact of the Stipulation was misplaced. Asking Mr. Brown whether he would have counseled Debtor to sign the Stipulation is meaningless, regardless of his answer. If Debtor had signed the Stipulation, nothing would have changed for her. The only effect of the Stipulation relating to Debtor was to change First American's claim against her from a cross-claim to a direct claim assigned to First American by Mr. Comond. From the beginning of the New York Litigation, First American proceeded against Debtor by asserting her forgery in the underlying real estate transaction.[28] First American's cross-claim against Debtor was based on that allegation of her forgery.[29] Mr. Comond, as part of the Stipulation, assigned his claim (and nothing more) to First American.[30] To the extent Debtor complains that she would not have approved the payment of money to her husband or that she would not have approved the assignment of her former husband's claim to First American, she is confused. She had nothing to say about First American settling with her former husband; and she had nothing to say about his assignment of his claim against her to First American. This may be why no one asked her to sign the Stipulation.

---

[28]    See Exhibit FA-3, Verified Answer with Cross Claims, First Cross-Claim for Relief, ¶¶ 52 & 53, p. 7.

[29]    Id.

[30]    Counsel for Debtor must know that throughout many bankruptcy cases, claims and debts are sold and assigned constantly. In bankruptcy, the parties are obliged to file notice of such an assignment. Dockets are replete with such notices. But none of the assignments of claims requires the consent of a debtor. In fact, the notices are required to inform the original creditor about the transfer so it may contest the transfer if it is not legitimate – debtor is not involved. See Fed. R. Bank. Proc., Rule 3001(e).

Third, Debtor's questioning of Mr. Brown about how he substituted his judgment in place of a decision of a judge or a jury and should therefore somehow be sanctioned or penalized is just plain wrong. Mr. Brown did what any competent attorney does (or should do) constantly in litigation. He analyzed the strengths and weaknesses of the case in favor of Debtor's husband, Mr. Comond, and compared them to the strengths and weaknesses of his client's case. He determined if settlement was advisable. Any attorney who does not constantly evaluate his or her case compared to the opponent's case commits malpractice.[31] Because the Stipulation did not affect, injure, or jeopardize Debtor in any way, I will deny Debtor's argument that the November 1, 2010 Order violated the automatic stay because it did not affect her simply by approving the Stipulation.

---

[31]     See generally Orin S. Kerr, A Theory of Law, 16 Green Bag 2d 111 (2012).

## D. EVEN IF THE NOVEMBER 1, 2010 ORDER RESTORING THE NEW YORK LITIGATION WERE VOID AND STRICKEN, THE CASE HAD BEEN PREVIOUSLY RESTORED ON APRIL 16, 2010, AND WAS SUBSEQUENTLY RESTORED AGAIN ON APRIL 14, 2013, THEREBY MOOTING ANY EFFECT IF THE AUTOMATIC STAY HAD VOIDED THE NOVEMBER 1, 2010 ORDER

I will assume arguendo that the automatic stay somehow rendered the November 1, 2010 Order void. The procedural history of the New York Litigation is clear that voiding the November 1, 2010 Order would have no effect on the Judgment. A prior order and a subsequent order both restored the New York Litigation independently of the November 1, 2010 Order. For my determination of this issue, the relevant dates and activities are:

1.  The New York Litigation was dismissed for inactivity on June 27, 2008.[32]

2.  Mr. Comond moved to restore the case on October 19, 2009.

3.  Mr. Comond's counsel failed to do what was required to restore the case and on October 26, 2009, the motion to restore was "marked off" and the case remained dismissed.

---

[32] The items in Paragraphs 1 – 6 in this Subsection D. are contained in the November 1, 2010 Order. Exh. FA-6. This is one of the items for which Debtor sought judicial notice.

4. On December 27, 2009, Mr. Comond again moved to restore the case.

5. Restoration of the New York Litigation was set for hearing on January 25, 2010, but was adjourned to April 16, 2010.

6. On April 16, 2010, the parties appeared before the New York court and explained that Mr. Comond's counsel was ill and near death.

7. On April 16, 2010, (a) the parties, other than Debtor and her son, engaged in settlement negotiations, (b) the case was restored, (c) the terms of a settlement were reached, (d) the terms were read into the record.[33]

8. The motions docket in the New York Litigation noted that the case had been "restored in regular order" on April 16, 2010.[34]

9. The New York Litigation proceeded until stayed by Debtor's first two bankruptcies but was dismissed for failure to prosecute on March 21, 2012.[35]

10. On August 17, 2012, First American (through its insured, Golden Grand) moved to restore the New York Litigation and for summary judgment.

---

[33]    See Testimony of First American's counsel, Mr. Brown, at the April 15, 2014 hearing from 11:05:10 a.m. to 11:09:20 a.m. See also order of New York court dated May 10, 2013, p. 4. Exh. FA-17.
[34]    Exh. FA-4.
[35]    The items in Paragraphs 9, 10, 12 and 13 of this Subsection D. are contained in the order of the New York court dated May 10, 2013. Exh. FA-17.

11. The motions docket in the New York Litigation noted that the case
was "restored in regular order" on April 14, 2013.[36]

12. On May 16, 2013, the New York court memorialized its prior
action on April 14, 2013, and ordered the case restored by a formal
written order.

13. Through the same May 16, 2013 written order that memorialized
the full, unqualified restoration of the New York Litigation, the
New York court also entered the Judgment against Debtor.

What if, as Debtor asks me to do, I were to take away the November 1
2010 Order, which restored the New York Litigation to active status, by declaring
it void. Such a decision would leave utterly untouched the April 16, 2010 order
that had previously restored the case to full force and effect and to active status.

On April 14, 2013, before the entry of the Judgment against Debtor on
May 16, 2013, the New York court had restored the New York Litigation yet
again. Debtor had no bankruptcy pending at that time. But Debtor contests the
Judgment because she alleges that it was entered in a case that had been
improperly restored through the November 1, 2010 Order. First American correctly
suggests that the April 2010 and April 2013 restorations of the case by the New
York court render moot any problem with the November 1, 2010 Order that

---

[36]     Exh. FA-4.

restored the case. Because the separate and independent restorations in both April

2010 and April 2013 cure any problem with the November 1, 2010 Order being

void, I will deny Debtor's motion to void the Judgment.

## E. DEBTOR'S ATTEMPT TO VOID THE NOVEMBER 1, 2010 ORDER IS LATE, IS BARRED BY LACHES, AND IS SUBJECT TO ANNULMENT OF THE STAY

Neither party raised Debtor's failure to initiate this contested matter in

this Court until over three years[37] had passed from the November 1, 2010 Order.

Debtor's inaction leads me to consider the defense of laches, which might bar

Debtor from bringing this dispute. I also believe that annulment of the automatic

stay insofar as it might affect the November 1, 2010 Order could be considered.

Throughout Debtor's first Chapter 13 case, No. 10-22825, her Second

Bankruptcy Case, No. 11-22442, and her Present Case, Debtor provided no notice

to the New York court that she had filed a bankruptcy case that might stay further

consideration of the New York Litigation. Furthermore, until more than two and

one-half years after November 2010, she failed to raise any objection anywhere to

the April 2010 and November 2010 restoration of the New York Litigation. Debtor

---

[37]    Debtor argued to the New York court that the November 1, 2010 Order was void in Spring 2013, two and one-half years after the November 1, 2010 Order. But she did not raise the issue with this Court until December 31, 2013, well over three years after the November 1, 2010 Order.

and her son testified loudly at the April 15, 2014 hearing that they did not know the

New York Litigation was pending because they thought it had been dismissed.

That might, very charitably, provide a basis for Debtor's failing to act before

March 2011,[38] but not thereafter. After March 2011, Debtor unquestionably knew

about the restoration and pendency of the New York Litigation.

First American filed its First Bankruptcy Proof of Claim for $190,000

in Debtor's First Bankruptcy Case on March 11, 2011. Debtor never contested the

claim.[39] First American filed its Second Bankruptcy Case Proof of Claim for

$190,000 in Debtor's Second Bankruptcy Case on November 21, 2011. Debtor

never contested the claim.[40] First American filed its Present Case Proof of Claim

on December 10, 2013. The Present Case Proof of Claim was based entirely on the

Judgment, which was obtained in Spring 2013.[41] Debtor did not object to First

---

[38]     Debtor's claim that she did not know that the New York Litigation had been reopened on April 16, 2011, long before Debtor filed her first bankruptcy, ignores the fact that her counsel in the New York Litigation received notice about the plaintiff's motion to restore the case and of the April 16, 2010 hearing date. Furthermore, before Debtor filed her First Bankruptcy Case, counsel for First American notified all counsel, including Debtor's counsel, of his presentation of the written Stipulation and proposed order to the New York court to memorialize the orders that had already been entered orally on the record. See Exhibit FA-7 – September 16, 2011 letter from counsel for First American to all other counsel in the case, including Debtor's counsel, about his filing with the New York court. So, Debtor's lack of knowledge about the pendency of the New York Litigation was caused by either her inattention or her counsel's failure to keep her informed.
[39]     Exhibit FA-9.
[40]     Exhibit FA-10.
[41]     Claims Docket in Present Case, Claim No. 8-1.

American's Present Case Proof of Claim until April 10, 2014, only a few days before the hearing in this dispute.[42]

Debtor claims that the November 1, 2010 Order permitted First American to proceed through the New York Litigation to obtain the Judgment. First American encumbered Debtor's real estate in Berks County when the Judgment was transferred to Berks County, Pennsylvania. Debtor failed to notify (or decided not to notify) the New York court about her bankruptcies until Spring 2013. Only then did she try to prevent First American from having summary judgment entered against her by complaining about the November 1, 2010 Order. And even then, Debtor decided for whatever reason not to attack the November 1, 2010 Order in this court until five months after the Judgment was entered. Debtor had been either informed or reminded about the November 1, 2010 Order by First American's counsel in March 2011. From March 2011 to May 26, 2011, when her first bankruptcy was dismissed, Debtor said nothing to this Court about the New York Litigation generally or the November 1, 2010 Order in particular. From September 19, 2011 to April 5, 2012, during the Second Bankruptcy Case, Debtor said nothing to this Court about the New York Litigation generally or the November 1, 2010 Order in particular. For over three months from September 16, 2013 to December 31, 2013, during her Present Case, Debtor said nothing relating

---

[42]    Main Case Docket, No. 77.

to the New York Litigation generally or the November 1, 2010 Order in particular.

Debtor's Schedule F lists an unsecured obligation (not contingent, unliquidated, or

disputed) against her by First American's counsel in the amount of $241,000.

Another issue arising out of Debtor's ennui is that First American

continued with the New York Litigation with no idea (until the argument on its

motion for summary judgment) that Debtor thought, or would claim, that the

November 1, 2010 Order was void. First American moved the New York

Litigation through to Judgment with every expectation that its actions were

legitimate and would eventually lead to an enforceable decision on the merits

against Debtor. In the face of First American's motion for summary judgment,

Debtor finally raised, two and one-half years later, the matter of the automatic stay

in the First Bankruptcy Case.

If Debtor believed that the November 1, 2010 Order had been entered

in violation of the automatic stay, she could have and should have proceeded

immediately to undertake a number of actions. She did nothing. The facts of the

matter before me are very similar to the facts of In re Coletta, 380 B.R. 140

(Bankr. E.D. Pa. 2007): Multiple bankruptcies; alleged violation of the stay in an

earlier case that is not argued until a later case; failure of debtor to keep creditor

informed about the existence of bankruptcies; failure of debtor to keep the state

court informed about the existences of bankruptcies; absence of actual knowledge

of creditor that the actions it took were during a pending bankruptcy; <u>inter alia</u>.

Judge Frank's detailed explanation of the efficacy of the laches defense and

annulment of the stay provide real guidance for future matters that might arise in

similar cases.

   As I noted above, I do not base this decision on laches or annulment

of the stay because neither party raised these issues to me.


## F. <u>DEBTOR'S CLAIM FOR SANCTIONS AGAINST FIRST AMERICAN MUST BE DENIED</u>


   As discussed above, Debtor's attacks on the November 1, 2010 Order

and therefore on the Judgment fail in all respects. She has established no

violation of the automatic stay of Section 362(a). Her request for sanctions

pursuant to Section 362(k) must therefore be denied.

# IV. <u>CONCLUSIONS</u>

On December 31, 2013, Debtor filed her pro se motion to order the New York court to void the New York Judgment. In April 2014, her counsel filed an amended version of her motion. Fundamentally, they both argue that an alleged violation of the automatic stay in the New York Litigation in November 2010 tainted the entire proceeding and rendered the later Judgment entered by the New York court in Spring 2013 void.

I will enter an appropriate order denying Debtor's motion for four reasons.

First, the New York court considered Debtor's argument about the automatic stay before it entered the Judgment. I will not overturn the New York court's decision because of the <u>Rooker-Feldman</u> doctrine, collateral estoppel, and res judicata.

Second, the November 1, 2010 Order did nothing substantive, was a purely ministerial, reiterative action, and did not restore, continue, or extend the New York Litigation.

Third, the Stipulation approved as part of the November 1, 2010 Order did not affect, injure, or jeopardize Debtor and did not therefore violate the stay.

Fourth, if the November 1, 2010 Order violated the automatic stay and was void, the case had been restored in April 2010 and was restored again in April 2013. The two unarguably proper restorations render moot (1) any question whether the November 1, 2010 Order was void and (2) any question about the impact of the automatic stay on later activity in the New York Litigation, such as the entry of the Judgment.

Because I will deny Debtor's motion to void the Judgment, I must also deny Debtor's request that I impose sanctions on First American.

Finally, I will schedule argument on First American's motion to dismiss Debtor's Chapter 13 case with prejudice.

Date:  May 13, 2014

BY THE COURT

Richard E. Fehling
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:  MARIE L. CHAVANNES,          :          Case No. 13-18075REF

Debtor          :          Chapter 13

# ORDER DENYING DEBTOR'S MOTION TO VOID NEW YORK JUDGMENT AND FOR SANCTIONS

AND NOW, this 13 day of May, 2014, upon my consideration of Debtor's motion and amended motion to compel the New York court to void the Judgment against Debtor[1] and for sanctions, filed on December 31, 2013, and upon my consideration of the testimony and exhibits presented at the hearing on the motion to void the New York Judgment on April 15, 2014, and upon the findings of fact, conclusions of law, and discussion, all described in the accompanying Memorandum Opinion accompanying this Order,

IT IS HEREBY ORDERED, therefore, that Debtor's motion to void the Judgment entered in the New York Litigation is DENIED.

IT IS FURTHER ORDERED, because the judgment in the New York Litigation is not void because no violation of Section 362(a) occurred, that no

---

[1]    The judgment that serves as the subject for this litigation is captioned First American Title v. Chavannes, et al., No. 06-25961 (N.Y. Supreme Court, County of Kings), was entered in a handwritten order on April 4, 2013, and was memorialized in a typed Order and Money Judgment dated May 10, 2013, which was entered on May 16, 2013 (hereafter the "New York Litigation").

sanctions shall be issued against First American or any other party for the actions

that are at issue in or related to the New York Litigation.

BY THE COURT

Richard E. Fehling,
United States Bankruptcy Judge